## STATE OF MINNESOTA vs. JAMES E. CONNELLY.

Argued June 1, 1894.   Reversed June 15, 1894.

No. 8832.

**Contradictory statements of prosecutrix.**

Certain evidence *held* not impeaching, in the sense of being statements of the witness contrary to what she testified to on the trial, but evidence of facts or acts tending to disprove the facts stated by the witness, and hence not requiring any foundation to be laid for its introduction by first calling her attention to it.

**Uncorroborated testimony of prosecutrix on a trial for rape.**

The uncorroborated testimony of the prosecutrix in this case being somewhat improbable, and being impeached in some particulars by her own previous inconsistent statements, and in other particulars by the testimony of other witnesses, *held* not sufficient to justify a conviction of the crime of rape.

Appeal by defendant, James E. Connelly, from an order of the District Court of St. Louis County, *Charles L. Lewis*, J., made January 18, 1894, denying his motion for a new trial after conviction of the crime of rape.

*Allen & Baldwin*, for appellant.

*H. W. Childs*, Attorney General, *John Dwan*, County Attorney, and *James A. Hanks*, for the state.

MITCHELL, J.   The defendant was convicted of the crime of rape, alleged to have been committed March 19, 1893, upon a girl of the age of seventeen years.   The girl was the foster daughter of one Thomas Hannon and wife, of whose family she had been a member for about twelve years.   This family consisted of Mr. and Mrs. Hannon, the girl, and her three foster brothers, all of whom were young men.   The family resided in the village of Two Harbors, in the county of Lake.   The defendant was a priest, in charge of the Catholic church and congregation in that village, to which the Hannon family belonged.   Some two days before the alleged commission of the offense, the defendant moved into a house next door to that of Hannons, his family consisting of his married sister and her child; also another woman, in the capacity of housekeeper.   The

latter, however, did not become an inmate of his house until a few days afterwards. The Hannons, including the girl, had some previous personal acquaintance with defendant while he was boarding at another house in the village. The defendant was convicted wholly upon the testimony of the prosecutrix. Without attempting to give it in full, her testimony may be fairly summarized as follows: She testified that on Sunday evening, March 19th, while she was on the porch of her own house, the defendant called her over to give her some pictures to put in her prayer book; that, upon going over, he took her upstairs into his bedroom; that she took a seat on a chair, and he on the bed; that, after conversing a short time on general subjects, defendant got a bottle of whisky out of a bureau drawer, poured some out into a glass, and drank it, and then poured out some more, and "put some stuff out of a little bottle into the glass with the liquor," and asked her to drink it; that she at first declined, but he insisted, saying it was wine; that she thereupon drank it, and knows it was whisky; that she soon "got weak, and began falling over a little;" that thereupon he picked her up, and put her on the bed, and ravished her; that she resisted all she could, and "hollered," but that he put his hands over her face, and accomplished his purpose by force; that, after the deed was committed, he got a revolver from his bureau, and, pointing it at her, told her he would kill her if she ever told; that she then returned home, and went to bed, it being then about nine o'clock, or the usual hour for retiring; that she never made any complaint or told any one about the matter until the 25th of the following May, when she told one of her brothers; that the reason she did not tell was because she was afraid defendant would shoot her if she did. She further testified that subsequent to this, and up to the early part of May, the defendant repeatedly had sexual intercourse with her in this same upstairs bedroom in his own house; that he made her go up there, and told her she had to, sometimes when she was out in the yard, and sometimes when she had gone over to his house; that she submitted, and did what he ordered, because he threatened to kill her if she did not. She further testified that she never went over to his house except when defendant ordered her to come, or when her mother sent her. She also testified that she was pregnant by defendant.

The particulars of her complaint to her foster brother on May 25th, of course, were not testified to, but it does appear that immediately afterwards the brother made complaint before a justice of the peace charging defendant with the crime of rape committed on May 4th. The testimony of the prosecutrix on this examination was in many particulars in conflict with her testimony on the trial on this indictment, but it is only fair to say that it appears that she was sick in bed, and quite weak, when she gave her evidence on the first examination. On defendant's hearing that the girl had made charges against him, his sister, at his instance, went to Hannons, and brought the girl over to defendant's house, where she made a written retraction of the charges, stating that they were untrue, and that defendant had never had sexual intercourse with her. This retraction she swears was extorted from her by force, but in this she is contradicted in whole or in part by defendant and his sister, and by a priest whom the bishop had sent out to investigate the charge.

Defendant, as a witness in his own behalf, positively denied the charge, testified that he never had intercourse with her, and that she was not even in his house on the evening of Sunday, March 19th, and as to this last fact his testimony was corroborated by other witnesses.

The testimony of the prosecutrix was entirely uncorroborated by any evidence, either direct or circumstantial, unless it be by the fact that she made complaint to her brother nearly ten weeks after the alleged commission of the crime.

Upon the trial, defendant offered to prove that early in May the prosecutrix was coming from defendant's house, when her mother reproved her for going there, whereupon she responded to her mother in an angry manner, and said: "I will. I am my own boss, and will go there when I please." Also, that on another occasion, in May, she asked another girl to go with her to defendant's house, accompanying the request with the remark, "Isn't he a nice man?" The court excluded this evidence, apparently on the theory that it was merely impeaching evidence, in the sense of being former statements of the witness, inconsistent with her statements on the trial, and that no foundation had been laid for its introduction. In this, we think, the court was in error. It was not impeaching

evidence in any such sense. The evidence offered was not of contrary statements, but of facts or acts tending to disprove the facts stated by the witness, and did not require any foundation to be laid for its introduction. She had testified that she was forced by threats to go to defendant's house, and submit to him. The evidence offered was of acts tending to show that she was both willing and anxious to go. For this error a new trial must be granted.

But a more vital question is whether the evidence was sufficient to warrant a conviction. There is no rule of law which forbids a jury to convict of rape on the uncorroborated evidence of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony. But the courts have always recognized the danger of convicting on her uncorroborated evidence, for, in the language of Lord Hale, "it is an accusation easily made, hard to be proved, and still harder to be disproved by one ever so innocent."

Where the testimony of the prosecutrix is uncorroborated, and bears some intrinsic evidence of improbability, courts have sometimes refused even to submit it to the jury. In some states, corroborating evidence is required by statute.

Where the charge is true, there will almost always be some corroborating evidence, such as injury to the person or clothing of the prosecutrix, or the fact that she made complaint as soon as practicable, and without unreasonable delay. While the rule requiring immediate complaint is not inflexible, yet the unexplained failure to do so is always considered a very important fact. It is so natural as to be almost inevitable that a female upon whom the crime has been committed will make immediate complaint, if she have a mother or other confidential friend to whom she can make it. The rule is founded upon the laws of human nature. The excuse for a delay in this case for nearly ten weeks was the alleged threats of defendant to kill her, but it must be borne in mind that the very existence of this excuse rests upon the uncorroborated testimony of the prosecutrix; and it must be admitted that her statement is certainly somewhat remarkable. Had she been an inmate of defendant's house, with no friends or relatives accessible, her story would be more reasonable. But she was living with and under the protection of her own family, consisting of her father, mother, and three adult brothers. Making all reasonable allowance for her youth, and for

the influence which defendant's sacred office might have over her, yet it is certainly remarkable that, by reason of defendant's alleged threats, she should not only keep silence as to the crime committed against her on the 19th of March, but that for weeks afterwards she should be forced to return to his house, go up into his bedroom, and there submit to his desires, and then return to the bosom of her own family as if nothing unusual had occurred.

Her testimony certainly bears some characteristics of improbability; and, as already remarked, it is wholly uncorroborated by a single circumstance, such as injury to her person or clothing. It is more or less impeached by her own contradictory statements. It is flatly denied by the defendant, and is in important particulars contradicted by the testimony of other witnesses.

The crime is so abhorrent that, to some minds, to charge a person with it, raises a presumption of guilt. It is human nature to incline to the story of the female, especially if a young girl. But, while virtue and veracity are the rule with them, yet even young girls, like older females, sometimes concoct an untruthful story to conceal a lapse from virtue.

Hence all the authorities agree that this is a crime requiring special scrutiny by the jury, and a careful weighing of the evidence and all remote and near circumstances and probabilities in cases where the testimony of the female is not corroborated, and especially where the testimony is at all improbable or suspicious.

The defendant may be guilty of a grave offense, although not guilty of the crime of rape, and he may be guilty of the crime charged; but it has not, in our opinion, been established by the degree of proof required by law, to wit, beyond a reasonable doubt. We could not conscientiously permit the conviction to stand.

Order reversed, and a new trial granted.

COLLINS and BUCK, JJ., took no part in this decision.

(Opinion published 59 N. W. 479.)