## STATE v. CHRIS H. AHLFS.[1]

July 3, 1925.

No. 24,713.

**Conviction for arson sustained.**
　　1. The evidence supports the verdict of the jury convicting defendant of arson.

**Remarks of trial judge and improper remark of witness not prejudicial.**
　　2. The interjection of uncalled-for remarks by officers who testified for the state, and the remarks of the trial judge in granting defendant's motion to strike them out, were not so prejudicial as to require a new trial.

[1]Reported in 204 N. W. 564.

**Defendant not prejudiced by his cross-examination.**

3. By referring in his testimony to other fires about which he had been questioned by the officers, defendant gave the state the privilege of cross-examining him on that subject, and the privilege was not abused to defendant's prejudice.

**Not error to refuse offer of defendant's letter.**

4. The rejection of defendant's offer in evidence of a letter relative to the fire, which he had written to the state fire marshal, was not error.

1. See Arson, 5 C. J. p. 580, § 63.
2. See Criminal Law, 17 C. J., pp. 295, § 3637, 325, § 3666.
3. See Witnesses, 40 Cyc. p. 2510.
4. See Criminal Law, 16 C. J. p. 636, § 1265.

Upon information of the county attorney of Kandiyohi county defendant was charged with the crime of arson in the third degree, tried in the district court before Qvale, J. and a jury, which found him guilty. Defendant appealed from an order denying his motion for a new trial. Affirmed.

*Daly & Barnard,* for appellant.

*Clifford L. Hilton,* Attorney General, *Charles E. Phillips,* Assistant Attorney General, and *Charles Johnson,* County Attorney, for respondent.

LEES, C.

The county attorney of Kandiyohi county filed an information charging defendant with arson in the third degree. The trial resulted in a verdict of guilty, and this appeal was taken from an order denying a motion for a new trial.

Defendant owned a dwelling house in Raymond, Kandiyohi county, in which a fire occurred at about 6 o'clock in the evening of December 19, 1923. The fire was promptly extinguished. It began in the attic, where the electric wires entered the house and were attached to the rafters. There the firemen found the resistance coil of an electric hot-plate attached to the wires. The heat generated thereby had set fire to the roof. A bottle of gasolene and some excelsior were also found nearby.

Defendant and his family occupied the house until September, 1923, when they moved to Walnut Grove, where they lived at the time of the fire. The house cost defendant $6,800. He insured it for $5,000 and offered it for sale for $4,500, but found no buyer. Shortly before the fire he came to Raymond and leased the house to a man named Schultz, whom he warned against turning on the electric current before the wiring was inspected, telling him that something was wrong with it. In the evening of December 19, Schultz and his wife were at the house to uncrate some of their furniture. Needing light, Schultz closed the switch and in a few minutes the crackle of flames was heard and an alarm was given.

The village constable was put in charge of the house for the night. He was away 10 or 15 minutes on two occasions. Before he left the first time the bottle of gasolene was where the firemen found it; when he returned after his second absence, it had disappeared.

Defendant was at Mountain Lake in the afternoon of the fire with one McBride. On his return to Walnut Grove in the evening, he was notified of the fire by a telephone message from Raymond. The next morning he drove to Raymond, where he was informed that people thought he was responsible for the fire. On his way back to Walnut Grove he stopped to consult his attorneys, and when he got home he wrote a letter to the state fire marshal, but did not mail it.

About the middle of December, defendant purchased a Liberty hot-plate at Egge's hardware store in Walnut Grove. The resistance coil found at the time of the fire had been taken from such a plate.

In the evening of December 21, at the request of the deputy sheriff of Kandiyohi county, defendant accompanied him and two deputy fire marshals to Willmar to submit to an interview concerning the fire. He was taken to the residence of Sheriff Bonde and questioned at length by the officers. They testified that he repeatedly denied that he had recently purchased a hot-plate or toaster. On December 27, he was again interviewed by two deputy fire marshals. They had learned of his purchase on December 15 at

Egge's store, and asked him to sign an affidavit stating that he had not made such a purchase. This he refused to do, finally admitting the purchase and producing from a drawer in his desk a box containing a Liberty hot-plate. Obviously he intended to lead the officers to believe that this was the plate he had recently purchased, for he told them he had intended to give it to his wife as a Christmas present, but had concluded to keep it until her birthday in January.

At this point in the narrative the testimony of McBride becomes important. He called on defendant at Walnut Grove on December 19 to interest him in the purchase of a grinding machine. The two men had never met before. Defendant became interested and went with McBride to Mountain Lake to see the machine in actual operation. When the two men separated in the evening, they agreed to meet the following morning. Early in the morning defendant came to McBride's room in the hotel and told him he had to go to Raymond to see about a fire in a house he owned there. As he was leaving, he asked McBride to go to Egge's store and buy a Liberty hot-plate. He gave him the money to pay for it and asked him to mail it from out of town to a woman in Walnut Grove whose name he wrote on an envelope. McBride testified that he complied with the request, but was unable to recall the woman's name. A saleswoman in Egge's store corroborated McBride as to the purchase. The state asserts that the hot-plate defendant had in his desk on December 27, is the one McBride purchased.

McBride also testified to the purchase in Minneapolis of another Liberty hot-plate on December 31. He stated that defendant met him there by appointment; asked him if the fire marshal had talked to him; told him that "it looked kind of bad, if two dollars will save a lot of trouble, I am willing to spend the money;" and gave him two dollars, with which McBride purchased a hot-plate which he kept. Defendant and his wife, who was with him at the time in question, flatly deny that this incident occurred. Its significance, if it did occur, is not at all clear. The state intimates that defendant wanted McBride to have a Liberty hot-plate in his possession

if he was interviewed by the fire marshal concerning the purchase he had made at Egge's store on December 20.

A man named Baker, who was an employe of the defendant in the month of December, 1923, testified that, when defendant and McBride were at Mountain Lake, he had occasion to open a drawer in defendant's desk, where he saw a box containing a Liberty hot-plate. The significance of this, if true, is that the plate defendant produced to the officers on December 27 was in his possession as early as the nineteenth, could not have been the one McBride purchased on December 20, did not have the resistance coil removed from it, and must have been the one defendant himself purchased on or about December 15. Baker's testimony is highly important because, if it is true, it breaks the chain of events connecting defendant with the contrivance which someone placed in the house to set it afire.

Other circumstances upon which defendant relies are the mysterious removal of the bottle of gasolene on the night of the fire when he was at his home in Walnut Grove; his warning to Schultz not to switch on the electric current until the wiring had been inspected; and the testimony of the electrician that before the fire defendant asked him to examine the wiring to locate and repair a short circuit. The circumstances are against the defendant. His previous good reputation and the absence of what would seem to be an adequate motive for the crime are in his favor.

A painstaking examination of the record has led us to the conclusion that on the whole the evidence was sufficient to warrant the jury in returning a verdict of guilty, and that, unless prejudicial error was committed in the course of the trial, the conviction must stand.

In the cross-examination of Sheriff Bonde relative to the interview with defendant on December 22, a question asked and answered was as follows:

Q. "The object of your examination there that night was to get a confession from him if possible?

A. "Yes, sir, my idea is to apprehend all criminals."

A motion to strike out all of the answer except "yes, sir," was granted, but nevertheless defendant contends that he was prejudiced. He says the sheriff had been long in office, was well known to the jury, and was a forceful man whose testimony would make a deep impression. We think the prompt action of the court removed any prejudice which may have been caused by the sheriff's uncalled-for remark and that defendant has no ground for complaint. Town of Wells v. Sullivan, 125 Minn. 353, 147 N. W. 244; Dun. Dig. § 7206.

Defendant complains about another occurrence at the trial. To the following question in his cross-examination relative to the interview at the sheriff's residence, a deputy fire marshal made the following answer:

Q. "Was that for the purpose of extracting a confession from the defendant?

A. "I knew the man was guilty and I wanted to see if I could get him to admit it and tell the truth."

Defendant's motion to strike was granted and the jury instructed to pay no attention to the answer. In granting the motion, the court said: "I don't think he is to blame from the way he has been questioned." Plaintiff excepted to this statement and the court remarked: "Certainly, take as many exceptions as you want," and another exception was taken.

Evidently the officers were anxious for a conviction. Their interest must have been apparent to the jury. We think their undue zeal was more likely to react in defendant's favor than to injure him and that he was not prejudiced.

In relating the interview at the sheriff's residence, defendant said he was asked whether he had had other fires, and that he told the officers about an elevator fire he had at Maynard and another at Clara City. On cross-examination the state took defendant over this portion of his narrative again. After several questions had been asked and answered, there was an objection which was overruled and a few additional questions asked. In the re-direct exam-

ination defendant was asked to explain the circumstances attending these fires, and did so in such a manner that the jury must have been satisfied that they were accidental. Be that as it may, after having introduced the subject of other fires himself, defendant is not in a position to complain of this incident.

Complaint is made because the letter written to the fire marshal was not received when defendant offered it in evidence. The statements it contained are in harmony with defendant's testimony. They are of a self-serving nature and although, in its discretion, the court might have received the letter, there was no error in its exclusion.

The other alleged errors are of minor importance and need not be discussed. In spite of defendant's previous good reputation and the absence of any direct proof of guilt, the verdict, stamped with the approval of the trial judge, must stand.

Order affirmed.

Holt, J., took no part.