## STATE v. JOHN R. KIEWEL.[1]

February 3, 1928.

No. 26,349.

**When his admission proves inculpatory part, defendant may prove exculpatory part of same transaction.**

1. Defendant was convicted of embezzling funds received by him as manager of the Fergus Co-operative Packing Company. The state having proved that he had settled civil suits brought to recover alleged shortages, it was ·error to exclude proof that when making the settlement he had asserted that he had not misappropriated any of the funds of the company. When the inculpatory part of a transaction is proved as an admission, defendant has the right to prove the exculpatory part of the same transaction.

[1]Reported in 217 N. W. 598.

Settlement for a crime constitutes no defense to a prosecution for it.

    2. A settlement which includes the compromise of a crime is void so far as it relates to the crime and constitutes no defense to a prosecution therefor.

Exception to rule that on trial for specific crime proof of other crimes is
    not admissible.

    3. Upon the trial for a particular crime proof of other crimes is not admissible as a general rule; but where the intent with which the act was done is an essential element of the crime charged, proof of other similar acts is admissible as bearing on that question, and prosecutions for embezzlement and fraud are within this rule.

Criminal Law, 16 C. J. p. 92 n. 87; p. 572 n. 12; p. 586 n. 98; p. 589
    n. 18.

---

See note in 2 A. L. R. 1077; 26 A. L. R. 541.

See note in 62 L. R. A. 226, 264; 43 L.R.A.(N.S.) 774; 9 R. C. L. 200;
    4 R. C. L. Supp. 648.

Defendant was convicted in the district court for Beltrami county of the crime of grand larceny in the first degree. He appealed from the judgment of conviction and from an order, Stanton, J. denying his motion for a new trial. Reversed.

    *Roger L. Dell* and *Murphy & Johanson,* for appellant.

    *Clifford L. Hilton,* Attorney General, *G. A. Youngquist,* Assistant Attorney General, and *J. L. Townley, Jr.* County Attorney, for the state.

TAYLOR, C.

Defendant was convicted of embezzlement constituting the statutory crime of grand larceny in the first degree, and appealed from the judgment and also from an order denying a new trial.

In July, 1920, The Fergus Packing Company, which had been engaged in the meat packing business at the city of Fergus Falls for many years, sold its business and plant to the Fergus Co-operative Packing Company. Defendant had been the manager of the old company; and the new company, on taking over the business, engaged him to continue as manager. He was given full charge

and control of the business, and managed and conducted it until the investigation about to be mentioned.

In 1923 many of the stockholders became dissatisfied with his management, and at a meeting of stockholders held December 4, 1923, a committee was appointed to have the books audited and to report on the management of the plant and the advisability of securing a new manager. The committee employed expert accountants who began work on the books December 12, 1923. Early in the investigation facts developed which seemed to indicate that certain items of property had been disposed of without entering the transaction on the books or giving the company credit for the proceeds. Pursuant to a request to explain these matters, defendant met with the auditors, the investigating committee, and the president, secretary and attorney of the company at the Kaddatz Hotel in Fergus Falls on the morning of December 22, 1923. He was asked about these several items and asserted that everything was on the books. One of these items was a shipment of lard or grease which the auditors had found on the records of the railroad company but not on the books of the packing company. Defendant insisted that it was on the books and went with the auditors to the plant to find it for them. He found the record of a shipment of lard, but not of the shipment in question.

It was arranged that he should go to the railroad office with one of the auditors after lunch and look up this shipment. As they started for the railroad office after lunch, he asked the auditor if he was looking for a carload of grease. On being answered in the affirmative, defendant said he had that car and would explain everything. They turned back, and the others were notified and all reassembled in the office of the attorney of the company over the Fergus Falls National Bank. The company did its banking business with that bank and had a safety deposit box in the bank vault to which defendant carried the key.

When they were assembled, he went down to the bank and came back with four sets of papers relating to four shipments of grease to D. Bergman & Company of St. Paul which he turned over to the representatives of the company. A certificate of deposit or cashier's

check for the amount received for the shipment was included in each set, and these are designated in the record as exhibits A-1, B-1, C-1, and D-1, respectively.    D. Bergman & Company had paid for these shipments by checks payable to the packing company. Defendant had indorsed each of these checks in the name of the packing company "by J. R. Kiewel."    The check for the first shipment was issued December 7, 1921, for $1,372.96.    Defendant deposited it in the American National Bank of St. Paul, February 28, 1922, and took a certificate of deposit therefor payable to himself. A year later he returned this certificate and received a renewal certificate for the amount with interest added, which is exhibit A-1 turned over to the packing company.    The check for the second shipment was issued September 20, 1922, for $1,540.16.    Defendant deposited this check in the First State Bank of Fergus Falls October 22, 1922, and took therefor a cashier's check payable to himself, which is exhibit B-1 turned over to the packing company.    The check for the third shipment was issued January 17, 1923, for $520.89.    Defendant deposited this check in the American State Bank of Fergus Falls February 13, 1923, and received the cash therefor.    On December 18, 1923, six days after the investigation started, he procured a certificate of deposit for that amount from the First State Bank of Fergus Falls, which is exhibit C-1 turned over to the packing company.    The check for the fourth shipment was issued March 24, 1923, for $445.79.    Defendant deposited this check in the American National Bank of St. Paul April 17, 1923, and received therefor either cash or a cashier's check payable to himself.    On June 15, 1923, he procured a certificate of deposit for the amount from the Farmers & Merchants State Bank of Fergus Falls, payable to himself, which is exhibit D-1 turned over to the packing company.    The packing company did no business with any of the banks with which these transactions were had.

Those present testify to the effect that when defendant turned over these papers he admitted that he had taken the proceeds of these shipments, but claimed that that was all he had taken and that he had not sufficient nerve to spend the money after taking it, and asked them to be as lenient with him as they could.    He asked

them not to notify the bonding company. They answered that they did not know what shortages might be found, and that it was necessary to notify the bonding company in order to keep the bond in force. He assured them that he would make good any such shortages and would put up cash to cover them, and a few days later put up the sum of $2,800 for that purpose. After further investigation the company claimed that defendant had misappropriated other items mentioned at the meeting in the hotel. Defendant disputed these claims and refused to pay them or put up any more money.

Thereafter two civil actions were brought against him and five indictments were returned against him. He settled the civil actions by paying $7,500 in addition to the proceeds of the grease and the $2,800 which he had previously turned over to the company. He pleaded guilty to larceny in the second degree upon one of the indictments and the others were dismissed. Thereafter the present prosecution was instituted by filing an information charging embezzlement of the $520.89 represented by exhibit C-1. One of the dismissed indictments was based on this same charge. The claim of defendant that the proceedings which resulted in the dismissal of the indictments operated as a bar to this prosecution was determined adversely to him in State v. Kiewel, 166 Minn. 302, 207 N. W. 646.

Defendant claimed in the present case that he had never misappropriated any of the funds of the company; that he kept the proceeds of the shipments of grease in the safety deposit box of the company as a secret reserve fund for use in emergencies; that these transactions were not entered on the books because he was keeping the proceeds as such secret reserve; that he took the checks and certificates of deposit in his own name merely to avoid confusing these funds with other funds of the company; and that he had never appropriated or used these funds, but had at all times kept either the money or a certified check or certificate of deposit for the respective amounts in the safety deposit box of the company as the property of the company.

We find ample evidence to sustain the verdict, and even defendant's own testimony is not very persuasive in his favor; but if errors resulting in substantial prejudice to him occurred at the trial, he is entitled to a new trial. He insists that he did not have a fair trial because of prejudicial conduct on the part of the trial judge and the prosecuting attorney, and specifies some 20 statements, rulings and questions as sustaining this contention. Having concluded that a new trial must be granted on another ground, we refrain from discussing these matters further than to say that we have examined them all and find nothing furnishing any substantial ground for criticism.

[1-2] The president of the company on direct examination testified concerning the bringing of the civil actions and in detail concerning the several claims asserted therein, and also testified that as a result of somewhat extended negotiations defendant had settled these actions by paying the sum of $7,500 in addition to the proceeds of the four grease items and the $2,800 turned over to the company as previously stated. On cross-examination defendant asked the witness to give the conversation between the parties at the time of the settlement. The question was objected to and the objection sustained. Thereupon defendant made an offer to show by the witness the conversation which formed the basis of the settlement and, in substance, that defendant had insisted therein that he had never appropriated to his own use or embezzled any of the funds of the company, and had further insisted that the indictments then pending had been unjustly returned and should be withdrawn because there had been no embezzlement, and further offered to show "that the packing company then agreed that there was no basis in fact for such charges of embezzlement," and that the indictments should be dismissed. The court ruled that the proffered evidence was inadmissible and excluded it. Defendant contends that the exclusion of this evidence was reversible error.

The ruling was clearly error. The court evidently looked upon the questions and the offer as an attempt to prove a compromise and settlement of a criminal offense and considered the evidence inadmissible for that reason. Of course crimes cannot be

settled or compromised; and any agreement to settle or compromise them is void and constitutes no defense to a prosecution therefor. State v. Kiewel, 166 Minn. 302, 207 N. W. 646. Also cases cited in note in Ann. Cas. 1916C, 66, et seq. But proof of the settlement of these claims was offered and received as an admission by defendant that property or the proceeds thereof had come into his hands for which he had failed to account to the company. Where an admission is put in evidence against a defendant it is well settled that he has the right to have the entire conversation or transaction put in evidence, so far as it bears upon the admission and was a part of the same conversation or transaction. Where the inculpatory part is admitted he has the right to have the exculpatory part, including self-serving declarations made at the same time and as a part of the same transaction, also admitted. The cases are collected in a note in 2 A. L. R. 1022.

A defendant may properly and legitimately settle a civil suit growing out of the same facts upon which a criminal prosecution is based; and doing so does not necessarily imply an admission of the truth of the criminal charge, for a civil liability may exist although no criminal act has been committed. But here the prosecution had presented evidence showing facts and circumstances leading up to and in connection with the settlement which would warrant the jury in taking the act of defendant in making the settlement as an admission that he had misappropriated property and funds of the packing company. The settlement having been proved as an admission, he was entitled to prove that at the time he made the settlement and as a part of that transaction he had asserted that he had never taken for his own use nor misappropriated any of the property or funds of the company and that this assertion was then conceded to be true. The weight to be given to such facts, if proved, was for the jury; and we cannot say that the exclusion of the proffered evidence was without substantial prejudice to the defendant.

[3] In view of another trial, it may be well to consider defendant's claim that evidence tending to prove that he had appropriated to his own use funds and property belonging to the company other

than that charged in the information is within the rule excluding evidence of other crimes and was erroneously admitted. It is the general rule that if a person is on trial for a particular crime, proof that he committed other unrelated crimes is not admissible. Cases where the only purpose is to show that the accused committed other crimes are within this rule. But cases where evidence tending to prove other crimes is relevant as tending to establish some element of the crime charged are not within this rule but within other rules, commonly termed exceptions to the general rule, but as well established as the general rule itself. Where a felonious intent is an essential element of the crime charged, and the acts upon which the charge is predicated are claimed to have been done for a lawful purpose and with no unlawful intent, evidence of other similar acts or transactions is admissible as tending to show the purpose and intent in doing the act charged. State v. Wilson, 72 Minn. 522, 75 N. W. 715; State v. Monroe, 142 Minn. 394, 172 N. W. 313; State v. Ettenberg, 145 Minn. 39, 176 N. W. 171; State v. Friedman, 146 Minn. 373, 178 N. W. 895; Albrecht v. Rathai, 150 Minn. 256, 185 N. W. 259; State v. Hacker, 153 Minn. 538, 191 N. W. 37; State v. Rosenberg, 155 Minn. 37, 192 N. W. 194; State v. Horr, 163 Minn. 141, 148, 203 N. W. 979; State v. Sabatini, 171 Minn. 137, 213 N. W. 552; State v. Holmes, 65 Minn. 230, 68 N. W. 11; 16 C. J. 586, 589. This is especially true in prosecutions for embezzlement and other fraudulent transactions. 11 Ann. Cas. 816, note; 62 L. R. A. 264, note; 43 L.R.A.(N.S.) 774, note.

Defendant obtained the $520.89 upon which the prosecution is based by cashing a check received by him for property of the company. Whether he obtained the money on this check for the purpose and with the intention of holding it as part of a secret reserve kept for the company as claimed by him or for the purpose and with the intention of appropriating it to his own use as claimed by the state was the principal and controlling issue at the trial. Defendant says in his brief that the essential inquiry was the question of intent. Evidence tending to show that he had misappropriated other property of the company under his control as manager was properly admitted as bearing upon that question.

For the error previously mentioned there must be a new trial. The judgment and order are reversed and a new trial granted.

HILTON, J. took no part.