## STATE v. F. C. THORNTON.[1]

April 20, 1928.

No. 26,703.

**President of bank convicted of embezzling proceeds of its certificates of deposit.**

Defendant was convicted of embezzling the proceeds of certain certificates of deposit issued by the bank of which he was president and managing officer. *Held*:

(1) That the finding that he received the certificates as agent of the owner for the purpose of investing the proceeds for her is sustained by the evidence;

(2) That sufficient foundation was laid for the reception in evidence of the records of the bank for the purpose of showing that he had appropriated the proceeds of the certificates to his own use;

(3) That entries made in the permanent records of the bank at the time of the transaction from temporary slips are original entries;

(4) That the state sufficiently accounted for the temporary slips by showing that they had been returned to defendant;

(5) That proof of the transactions in which he used the money was properly received to show what he did with it;

(6) That the claim that he invested the proceeds of the certificates for the owner has no basis of fact to support it;

(7) That evidence to show a settlement of the civil claim was properly excluded as constituting no defense;

(8) That such evidence was not admissible under G. S. 1923, § 10373;

(9) That defendant so connected this transaction with a prior transaction that evidence thereof was admissible; and

(10) That where defendant testifies as a witness in his own behalf, he may be cross-examined as to any matters pertinent to the issue.

Criminal Law, 16 C. J. p. 596 n. 59; p. 615 n. 65; p. 743 n. 81.

Embezzlement, 20 C. J. p. 455 n. 40; p. 456 n. 44; p. 483 n. 40; p. 484 n. 53; p. 486 n. 60.

Witnesses, 40 Cyc. p. 2510 n. 29.

See note in 52 A. L. R. 501.

See note in 52 L.R.A.(N.S.) 1013; 9 R. C. L. 1298; 2 R. C. L. Supp. 964; 4 R. C. L. Supp. 649; 7 R. C. L. Supp. 317.

[1]Reported in 219 N. W. 176.

Defendant appealed from a judgment of the district court for Swift county, Baker, J. convicting him of grand larceny in the first degree and from an order denying his motion for a new trial. Affirmed.

*Le Sueur, Diepenbrock & Caswell,* for appellant.

*G. A. Youngquist,* Attorney General, *Will A. Blanchard,* Special Assistant Attorney General, and *J. A. Lee,* County Attorney, for the state.

TAYLOR, C.

Defendant was convicted of the crime of statutory grand larceny in the first degree. He appealed from the judgment and from an order denying a new trial.

The charge in the information, briefly stated, is that the defendant having in his possession, as agent of Louise A. C. Johnson, certificates of deposit and the proceeds thereof of the value of $2,500 for the purpose of investing the same for her in a first mortgage on real estate, feloniously appropriated the same to his own use with the intent to deprive her of her property.

1. Although the question does not appear to have been raised at the trial, defendant earnestly contends here that the evidence will not justify a finding that he received the certificates in question as the agent of Miss Johnson. Defendant was, and for many years had been, the president and managing officer of the First National Bank of Benson. Miss Johnson carried a checking account in the bank and in April, 1925, also had certificates of deposit aggregating $3,350 in her safety deposit box in the bank. In November, 1923, defendant had made an investment for her of $7,000 in what is designated in the record as the Bruce mortgage, which will be mentioned later. In April, 1925, he wrote her:

"I wish that you would step in and see me when you get this. I have something good for you that I think you need and I will tell you about it then."

On May 8, 1925, she called at the bank and was informed by defendant that he had a six per cent first mortgage for her of $2,500

on 200 acres of land. This is designated in the record as the McNeel mortgage. After some discussion of the matter, she and defendant went to her safety deposit box and got her certificates of deposit. She indorsed them and turned them over to him. He gave her a new certificate of deposit for a part of the excess above $2,500 and placed the remainder of such excess to her credit in her checking account. He retained the $2,500 to be used in paying for the mortgage, and gave her a receipt or memorandum written on one of the deposit slips of the bank. On the line for the name of the depositor immediately below the printed words "Deposited by" on this slip is written, "Invested for Louise A. C. Johnson." In the space for listing checks is written, "R. E. Mortgage drawing 6% from this date for $2,500.00. F. C. Thornton, Pres."

Miss Johnson states that defendant said he did not have time to make out the papers then but would do so when he got around to it. Defendant states on direct examination:

"I told her I would take the $2,500 from her and make her a set of papers for an investment for that amount to draw her six per cent. * * * I told her that I would try to arrange for a five year loan, but I did not expect to be able to do that with the first set of papers that we would have to use, that she would have to wait a while until I got matters fixed up; and that was satisfactory to her."

On cross-examination he was asked:

"As I understand your explanation now, Mr. Thornton, this $2,500 that you got from Miss Johnson this afternoon was taken by you to purchase this $2,500 mortgage?" To which he answered, "Yes, sir."

What we have quoted is only a small portion of the evidence bearing upon this question. The evidence as a whole amply justified the jury in finding that defendant held the $2,500 represented by these certificates as the agent of Miss Johnson for the purpose of procuring a first mortgage for her in that amount. State v. Brame, 61 Minn. 101, 63 N. W. 250; State v. Peterson, 167 Minn. 216, 208 N. W. 761, and see annotation in 52 A. L. R. 501.

2. Defendant immediately placed the $2,500 left with him by Miss Johnson to his own credit in his personal checking account, and checked it out within the next three weeks for his own individual purposes. These facts were shown by the books and records of the bank supplemented by the testimony of officers and employes of the bank.. To prove the disposition made of the money the various transactions in which defendant paid it out were shown.

Defendant assigns as error the rulings admitting the books and records in evidence, claiming that they were admitted without laying a sufficient foundation therefor. All the books and records of the bank bearing upon these matters were produced and properly identified and authenticated by those who made them. It is true that the temporary slips containing the memoranda from which certain entries were made were not produced. But they were not in the possession of the bank, having been returned to the defendant. On showing that they had not been preserved by the bank, the books were admissible without producing them. Entries in the books kept as permanent records made at the time of the transaction from temporary memoranda are original entries within the rule requiring the production of the original entries. Annotation following State v. Stephenson, 2 Ann. Cas. 841; Levine v. Lancashire Ins. Co. 66 Minn. 138, 68 N. W. 855; Keller Elec. Co. v. Burg, 140 Minn. 360, 168 N. W. 98; Lampert Lbr. Co. v. Fleisher, 142 Minn. 150, 171 N. W. 309. If a temporary memorandum has in fact been preserved and is available, the court might properly require it to be produced. But tracing the slips containing the memoranda into the possession of the defendant was all that was required in any event, for he could not be compelled to produce them to be used as evidence against himself. State v. Minor, 137 Minn. 254, 163 N. W. 514; State v. Spalding, 166 Minn. 167, 207 N. W. 317. The foundation for the admission of the books and records was ample. Furthermore, defendant when on the stand admitted the facts shown by these entries and that the entries were correct.

Defendant also assigns as error the rulings admitting evidence of the various transactions in which he had used this money. It was proper for the prosecution to show the disposition made of the

money. This evidence was presented for that purpose, and we find no error in the rulings. That the facts were as shown by this evidence defendant himself admitted on cross-examination.

3. Defendant makes a claim to the effect that he gave Miss Johnson full value for the $2,500 and therefore was not guilty of embezzlement. His wife owned 200 acres of land on which he and his wife had given a first mortgage of $10,000 to an insurance company and a second mortgage of $2,500 to McNeel who lived in Chicago. The McNeel mortgage became due in March, 1925, and the bank paid McNeel the amount of the mortgage and received from him an assignment of it. Defendant says this is the mortgage he had in mind in his talk with Miss Johnson. Immediately after she left the bank on May 8, defendant credited the $2,500 to his own checking account and made out two promissory notes payable to the bank on April 1, 1930, one for $500, the other for $2,000. They are identical in form except as to amounts and bear identical indorsements. The name of McNeel is affixed to each as maker. On the back of the notes is a certificate signed in the name of the bank by defendant as president,

"that the within bond is one of a series secured by a mortgage held by this bank as trustee and that this bond is registered with this bank in the name of the following assignee: viz., Louise A. C. Johnson."

Below this, also signed in the name of the bank by defendant as president, is the following:

"For value received we hereby assign and transfer the within note together with all my right, title and interest in and to the mortgage deed securing the same, to Louise A. C. Johnson, without recourse."

Defendant placed these papers with the McNeel papers in the bank file and they constitute the "value" which he claims to have given Miss Johnson for her $2,500. She knew nothing of this transaction and never saw these papers until they were produced at the trial. McNeel had never given any notes or any mortgage to the

bank, and his name had been affixed to these notes by a rubber stamp without his knowledge or consent. Defendant admits all the foregoing facts and that he never informed Miss Johnson of any of them. She had no knowledge of these matters until she sought to obtain her securities after the bank had been closed and placed in the hands of a receiver. That the fictitious McNeel notes prepared by defendant without the knowledge of either McNeel or Miss Johnson constituted no consideration for the $2,500 received from her is too obvious to require discussion. To support his claim that he had given Miss Johnson full value for her money, defendant presented testimony to show that the value of the land covered by the McNeel mortgage was double the amount of both mortgages thereon, and complains because the court struck out this testimony. Neither the McNeel mortgage nor any interest therein was conveyed to Miss Johnson, and its value as security was wholly immaterial. The testimony was properly stricken.

4. Defendant sought to show as a defense to the prosecution that some three months after the bank closed he had made a settlement with Miss Johnson of the claim in question and of the $7,000 claim under exhibit F, mentioned later, and had given her a mortgage as security for both claims, and assigns as error the rulings excluding proof of this settlement. The rulings were correct. A settlement of the civil claim arising out of an embezzlement constitutes no defense to a criminal prosecution therefor. Even if the defrauded party had assumed to compromise and settle the criminal liability, which is not claimed here, it would not estop the state from prosecuting for the criminal act. State v. Kiewel, 166 Minn. 302, 207 N. W. 646; State v. Kiewel, 173 Minn. 473, 217 N. W. 598. The proffered evidence was not within the rule stated in the second Kiewel case for the prosecution had made no reference to this settlement.

Defendant insists that evidence that he had made the settlement and given security for repayment of the money before the filing of the information was admissible under G. S. 1923, § 10373, which reads:

"The fact that the defendant intended to restore the property stolen shall be no ground of defense, nor shall it be received in mitigation of punishment unless the property shall have been restored before complaint charging the commission of the crime has been made to a magistrate."

Defendant seeks to construe the statute as if it read that intent to restore the property stolen shall be no ground of defense unless the property shall have been restored before complaint charging commission of the crime has been made to a magistrate. But the statute will not bear that construction. It declares that intent to restore shall be no defense. This is in accord with the well settled rule that intent to restore the property or its actual restoration constitutes no defense to the criminal prosecution. Annotation in 52 L.R.A. (N.S.) 1013; and in Ann. Cas. 1916C, 66. The statute further declares that the fact that defendant intended to restore the property shall not be received in mitigation of punishment unless the property had been restored before complaint charging the commission of the crime had been made to a magistrate. The right of a defendant to show to the court in mitigation of punishment that he intended to restore the property is limited by this provision to those cases in which he had restored it before the commencement of criminal proceedings. Defendant was not entitled to prove the settlement even for the purpose of mitigating punishment, for he does not claim to have restored the money which he had stolen. He claims merely that he had given a note for the amount secured by a mortgage.

5. Defendant insists that the court erred in overruling his objections to certain questions asked him on cross-examination in respect to exhibit F. Exhibit F was the instrument which defendant had given to Miss Johnson in 1923 to represent her interest of $7,000 in the Bruce mortgage of $24,000. It purports to be a promissory note executed to the bank by Bruce and his wife, and is labeled, "First Mortgage Note." It developed at the trial that Bruce and his wife executed the original notes and mortgage to defendant; that defendant transferred them to the bank; and that the mortgage

was in fact a second mortgage. It further developed that exhibit F was not one of the notes executed by Bruce and his wife, but was a form prepared by defendant to which the names of Bruce and his wife had been affixed as purported makers by means of a rubber stamp. Miss Johnson did not learn that these signatures were not genuine nor that the Bruce mortgage was a second mortgage until after the bank failed. The state did not go into the matter of the Bruce mortgage on the direct examination of Miss Johnson. On cross-examination defendant brought out the fact that at the interview of May 8, 1925, he had told her that the papers she would receive for her $2,500 mortgage would be the same kind of papers she had for the $7,000 mortgage, and that she was then satisfied to make another deal of the same sort. Also that she had obtained the $7,000 mortgage or mortgage note through him and that it was on the Bruce farm. Also that after the failure he had assured her that it was good. On redirect the state went into this matter quite fully. In the course of the redirect examination defendant produced exhibit F and voluntarily tendered it to the state to be put in evidence. The state put it in evidence.

Defendant took the stand as a witness and stated, among other things, that he "made out the same kind of a bond" for the $2,500 that Miss Johnson "had been in the habit of having before." We find no error in permitting the state to elicit from him on cross-examination the facts in respect to exhibit F and the Bruce mortgage. He opened the door for it. That transaction was so connected with the transaction in question that evidence of it was admissible as tending to show the purpose and intent with which the acts in question were done. State v. Kiewel, 173 Minn. 473, 480, 217 N. W. 598, 601, and cases there cited. Where the defendant takes the stand as a witness in his own behalf he thereby waives his privilege, and the cross-examination is not limited to matters brought out on the direct examination but may be extended to any matters pertinent to the issue. State v. Wood, 169 Minn. 349, 211 N. W. 305, and cases cited; 6 Dunnell, Minn. Dig. (2 ed.) § 10307, and cases cited.

6. A large number of rulings admitting or excluding evidence are assigned as error. We have examined them all and find that all of any importance have been covered by what has already been said. Defendant presented 24 requests for instructions to the jury. The charge as given was full, clear and correct and fairly and sufficiently covered all the issues. It was eminently fair to defendant and submitted the case to the jury as fully and completely as he was entitled to have it submitted. There was no error in refusing to give his requests except as they were covered by the general charge.

We find no errors, and both the judgment and the order must be and are affirmed.

STONE and HILTON, JJ. took no part.