# STATE v. GRANT HOMME.[1]

April 9, 1948.

No. 34,600.

O. A. *Lende* and L. P. *Johnson*, for appellant.

J. A. A. *Burnquist*, Attorney General, *Ralph A. Stone*, Assistant Attorney General, and *Russell L. Frazee*, County Attorney, for the State.

MAGNEY, JUSTICE.

Defendant was convicted of the crime of criminal negligence. He appeals from the judgment of conviction.

The information charges that on December 19, 1946, defendant wrongfully, unlawfully, and feloniously operated a motor vehicle upon a public highway in a reckless and grossly negligent manner, thereby causing the death of one Theodore A. Knutson.

In addition to other assignments of error, defendant challenges the sufficiency of the evidence to sustain the conviction. This is the only serious question in the case.

Belview bridge spans the Minnesota River and connects state aid highways in Redwood and Renville counties. The bridge proper is 220 feet long, with an approach from the north, the Renville county side of the river, of 45 feet and an approach at the south end of 34 feet. The first curve from the north is 650 feet from the bridge, which can be seen by one approaching from the north at a

---

[1]Reported in 32 N. W. (2d) 151.

distance of about 900 feet. From a point 700 feet from the bridge to the north one can see across the entire bridge. At the south end of the bridge there is an abrupt turn toward the east. Anyone coming down the approach from the north would not see anyone from the south until the one approaching from the south reached a point about 50 feet from the south end of the bridge. The bridge is 16 feet wide and 15 feet 4 inches between hub rails, the traveled portion of the bridge. Two steel wearing plates run down the length of the bridge. Between the outer edges of these steel plates and the hub rails is a space of about 3 feet 9 inches. Some distance from each end of the bridge is a sign reading "One Lane Bridge," the one to the north being located 108 feet from the high span of the bridge and 6½ feet from the ground.

On the morning of December 19, 1946, Theodore A. Knutson was driving a 1937 Minneapolis-Moline tractor, 5 feet 8 inches wide measured from the outside of the rubber tires, with a four-wheel trailer equipped with a triple wagon box hitched on behind. He approached the Belview bridge from the south. Defendant, 30 years of age, operating a 1946 Ford V-8, which measured 4 feet 6 or 8 inches wide, was approaching the bridge from the north. The tractor and the car collided about 32 feet from the north end of the north approach to the bridge where the main span and the approach meet. Knutson was thrown over the railing of the bridge northerly 27 feet and easterly 18 feet. The drop was 23 feet. He died as a result of the collision. The tractor was completely broken up. The left front of the Ford was damaged. Two witnesses testified that they first passed Knutson about two and one-half miles south of the bridge and later met Homme about three miles north of the bridge. The witnesses said that they were traveling 40 miles an hour. So, while these two witnesses and defendant were covering about eight and one-half miles, Knutson had driven his tractor about two and one-half miles. A witness who lived one-eighth of a mile south of the bridge saw Knutson pass and waved at him. According to him, Knutson was then driving 10 to 15 miles an hour.

After the collision, defendant's car was facing in a general southerly direction and the tractor north. The distance from the right rear wheel of his car to the railing on the west side of the bridge was five feet. The front right wheel was 5 feet 10 inches from the hub rail on the west side of the bridge. The car had stopped on the steel wearing plates. Skid marks 36 feet long extended from the rear wheels of the car down the middle of the wearing plates. They started about four feet north of the bridge, thus four feet before reaching the wearing plates. From the right rear wheel there were skid marks 18 inches to the south and 10 inches to the west. No skid marks were found which may have been made by the front wheels of the car. There were no skid marks made by the tractor itself. There was one skid mark made by the left rear wheel of the trailer, backward 10 inches and to the east 8 inches. It was pushed back until the wheels hit the guardrail. The tracks of the tractor showed up between the metal wearing plates up to a point about 30 or 35 feet back of the trailer, where they angled abruptly to the east side of the bridge. The tracks on the east side of the bridge were about three or four inches from the hub rail. There was a layer of frost on the floor of the traveled portion of the bridge, and there had been frost on the wearing plates, but it had been worn off by travel, forming an icy, slippery surface. These plates were somewhat corrugated, but had worn quite smooth.

Defendant testified that for 700 feet he had a clear view of the bridge. He knew he was approaching a one-lane bridge and that it was dangerous and one had to drive slowly. He said he looked down the road and that he did not see anybody on the bridge until he was almost on the bridge; that he was about 30 feet from the bridge when he first saw something swing onto the bridge coming from the south about 266 feet away. He said that he was driving 30 to 35 miles an hour, and that he immediately applied the brakes and threw out the clutch. While he was skidding, the tractor kept approaching at about 17 to 20 miles an hour and did not decrease its speed. He claimed that he stopped the car while the tractor was still about 15 feet away; that he was trying to shift into

reverse so as to back off the bridge; and that while so doing the tractor came across the bridge and struck him. Knutson was standing up as he approached, and defendant said it looked like he was trying to jump from the tractor. Defendant's car was damaged at the left front. The collision did not throw defendant against the steering wheel, and he received no bumps or injuries of any kind. At the coroner's inquest, defendant testified that he was blinded by the sun. At the trial he did not say that he was blinded by the sun, but that it affected his vision, but not to the extent that he could not see. Also, at the coroner's inquest, he testified that he did not see the tractor until he was within 15 to 25 feet from it. State's witnesses testified that immediately after the accident defendant said that "he had run against Ted Knutson."

This is not a case of ordinary negligence. Defendant was charged and convicted of the crime of criminal negligence. The crime is defined in M. S. A. 169.11 as follows:

"Any person who by operating or driving a vehicle of any kind in a reckless or grossly negligent manner causes a human being to be killed, under circumstances not constituting murder in the first, second, or third degree, or manslaughter in the first or second degree, is guilty of criminal negligence in the operation of a vehicle resulting in death."

In State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480, 483, we defined "reckless" as follows:

"* * * 'reckless' means, * * * a wilful or a wanton disregard for the safety of persons or property, which involves intentional conduct, but not intentional harm as a result thereof."

We also in that case adopted the following definition of "grossly negligent":

"* * * 'grossly negligent' mean[s] very great negligence or the want of even scant care, but not such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong."

In order to determine whether defendant was properly convicted, we must apply the above definitions to the facts of the case. In doing so, we must take the most favorable view of the state's testimony of which it is reasonably susceptible, and it must be assumed that the jury believed the state's testimony and disbelieved that which contradicted it. State v. Schabert, 222 Minn. 261, 24 N. W. (2d) 846.

In the state's testimony, there is no direct testimony as to the speed of defendant's automobile. By calculating the time it took Knutson to drive the two and one-half miles from the point at which two of the state's witnesses said they met him to the place of accident, the time it took these same witnesses to drive, at 40 miles an hour, to the point where they met defendant three miles north of the bridge, and the time it took defendant to drive from that point to the place of the accident, one could infer that defendant was operating his car at an excessive rate of speed. But the testimony is to the effect that defendant skidded 36 feet to the place of collision on the icy wearing plates, which had been worn quite smooth; that in the collision only the left front of defendant's car was damaged; that defendant was not thrown against the steering wheel; and that he was neither bumped nor injured. These facts are undisputed. Under such a set of facts, it appears to us that the speed at which defendant was operating his car could not come under the above definitions of "recklessness" or "gross negligence." The state has failed to meet the burden of proof beyond a reasonable doubt as to the speed sufficient to constitute criminal negligence.

Another element of negligence centers on the fact that defendant knew that he was approaching a one-lane bridge which was dangerous and that he failed to see Knutson's approach. We have already detailed the evidence, and there is no need for a restatement. On the testimony, we are of the opinion that on this feature of the case there is not sufficient evidence to sustain beyond a reasonable doubt the claim that defendant exhibited "either a wilful or a wanton disregard for the safety of persons or property, which involves intentional conduct, but not intentional harm as a result

thereof" or "very great negligence or the want of even scant care, but not such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong." It is our opinion, taking the most favorable view of the state's testimony of which it is reasonably susceptible, that the evidence does not sustain a verdict of guilty of criminal negligence. Therefore, it is ordered that defendant be absolutely discharged.

Judgment reversed.