# STATE v. LUTHER WILLIAM FULFORD.

187 N. W. (2d) 270.

May 14, 1971—No. 42282.

*C. Paul Jones,* State Public Defender, and *Ronald L. Haskvitz,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *James M. Kelley,* Assistant Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Nelson, Murphy, Peterson, Kelly, and Odden, JJ.

NELSON, JUSTICE.

Defendant, Luther William Fulford, appeals from a conviction of second-degree murder.

Shortly after 1 a. m. on February 4, 1969, police officers were summoned to the Glendale Apartment Hotel, 513½ Wabasha, St. Paul. When they entered the building, they saw Richard Younghans seated, hunched over, on the stair landing of the second floor. Officer Warren Bostrom remained with Younghans to administer first aid, while Officer Richard Dugan, among others, went directly to defendant's room on the third floor. The officers requested to be let in, and upon being told to get a passkey, they obtained entrance by kicking in the door. Defendant was then searched and placed under arrest. Also searched was a coat hanging over a chair in close proximity to defendant. An 8-inch knife was removed from a pocket of the coat by one of the officers.

Defendant was interrogated at the St. Paul Public Safety Building at approximately 3:50 a. m. by Detective Earl Miels and was subsequently charged with second-degree murder.

On appeal defendant raises the following issues: (1) Was he denied due process of law by the admission of evidence concerning an alleged knife threat by him many hours prior to the incident for which he was on trial? (2) Was the evidence concerning a prior knife threat inadmissible, even if within a recognized exception to the general exclusionary rule, due to the state's failure to properly notify the accused before the trail of its intent to introduce such evidence? (3) Was the seizure of the knife from defendant's coat in his room at the time of his arrest violative of the Fourth Amendment to the United States Constitution? (4) Was defendant denied his constitutional rights when the district court ruled that photographs of his room, taken by the police when he was arrested, were admissible without having a pretrial evidentiary hearing on their admissibility? (5) Was defendant denied due process and a fair trial because the instructions to the jury did not contain an instruction on the "heat of passion" aspect of manslaughter? (6) Was the conduct of defendant's counsel in failing to present certain witnesses and to make certain objections so palpably incompetent as to have denied defendant adequate aid and representation of counsel? (7) Was the evidence sufficient to support the verdict?

■ Paulette Nordstrom, a resident of the Glendale Apartment Hotel, was first called in the state's case in chief as a witness. Her testimony was carefully limited, the assistant county attorney avoiding any reference to any criminal conduct by defendant. She testified that defendant and one "Sam" had been at her apartment twice on the morning of February 3, 1969; that the knife which had been introduced at the trial belonged to her; that it had been taken by defendant's companion; and that she had seen it in "Sam's" possession that morning. Objection to this testimony was overruled.

After the state rested, defendant chose to take the witness stand in his own defense. In the course of direct examination, defendant's counsel led defendant through detailed questioning concerning the events that took place on his two visits to Paulette

Nordstrom's apartment with Sam Davis on the morning of February 3. Defendant admitted he "reasoned with" Paulette to get at least half of a disputed $20 and that Sam had picked up her knife, which had been introduced into evidence. It was only on cross-examination after this colloquy that the assistant county attorney first questioned defendant as to whether he had made any threats or used a knife to coerce Miss Nordstrom to give him money. Defendant denied making any threats and failed to recall whether a knife was applied to or near her neck or throat by anyone that morning. It is clear that the state was entitled to cross-examine defendant in relation to matters opened up by direct examination even though such inquiry brought out, or referred to, collateral criminal conduct. State v. Ahlfs, 164 Minn. 110, 204 N. W. 564; State v. Thornton, 174 Minn. 323, 219 N. W. 176; State v. Tsiolis, 202 Minn. 117, 277 N. W. 409.

■ Once defendant had denied making the threats, it is equally clear that it was competent for the state to present Miss Nordstrom's testimony as to the threats in rebuttal for the purpose of impeaching defendant's credibility. Testimony that defendant's prior conduct was inconsistent with that described in his testimony is clearly admissible for that purpose. 20 Dunnell, Dig. (3 ed.) § 10352, and cases cited therein; State v. Connelly, 57 Minn. 482, 59 N. W. 479.

■ In view of the fact that the testimony of Miss Nordstrom was properly admissible in rebuttal for impeachment, the issue as to the applicability of the pretrial notice provisions of State v. Spreigl, 272 Minn. 488, 139 N. W. (2d) 167, and State v. Billstrom, 276 Minn. 174, 149 N. W. (2d) 281, is rendered moot. Those cases only require notice of an intent by the state to introduce evidence of collateral crimes in its case in chief.

■ While defendant contended otherwise, the knife seized from defendant's coat, which was on a chair a few feet from defendant's person at the time of his arrest, was properly admitted into evidence because it was seized incident to a valid arrest. See, Simberg v. State, 288 Minn. 175, 179 N. W. (2d) 141.

With respect to defendant's assertion that the photographs of his room were inadmissible, it is apparent from the evidence that no search and seizure was involved in the instant case. Since the police officers were validly in the room, they could properly view everything in plain sight in that room. State v. Clifford, 273 Minn. 249, 141 N. W. (2d) 124; State v. Kotka, 277 Minn. 331, 152 N. W. (2d) 445, certiorari denied, 389 U. S. 1056, 88 S. Ct. 806, 19 L. ed. (2d) 853; State v. Huffstutler, 269 Minn. 153, 130 N. W. (2d) 347. If the officers could validly view the inside of the room at all, they could validly photograph that which was in plain sight, and the photographs were properly admitted in evidence.

■ The trial court properly did not submit to the jury defendant's possible guilt of the crime of first-degree manslaughter under Minn. St. 609.20(1). In State v. Jordan, 272 Minn. 84, 86, 136 N. W. (2d) 601, 603, the criteria for submission of crimes different from the one with which the defendant has been charged have been exhaustively defined:

"There are five principles which apply with respect to the submission of included crimes for consideration by the jury:

"(a) A person prosecuted for a crime may be convicted either of the crime charged or an included crime, but not both.

"(b) If a defendant is guilty as charged, or not at all, instructions with respect to lesser but included crimes are not appropriate.

"(c) If the evidence adduced at trial would permit a finding of guilty of an included crime, defendant is entitled to appropriate instructions advising the jury of its power to return a verdict of guilty of the lesser offense.

"(d) The right of the defendant to have such instructions given to the jury may be waived (d1) expressly or (d2) implicitly by failure to make proper request for such admission.

"(e) Where the jury is provided with forms of verdicts and paragraph (c) above applies, a form of verdict should be included

for use by the jury if it finds the defendant guilty of the lesser but included offense."

In the light of these criteria, defendant was in no way prejudiced by the failure of the trial court to charge the jury on "heat of passion" manslaughter, since first-degree manslaughter (§ 609.20[1]) is not a lesser included offense of second-degree murder (§ 609.19).

Even if "heat of passion" manslaughter were a lesser included crime, the evidence in this case does not compel its submission to the jury because the evidence supports, if it does not compel, a finding of intentional unpremeditated, second-degree murder. The record reveals that the only testimony concerning provocation was that decedent called defendant a name and slapped him a couple of times. Such provocation would, as a matter of law, be insufficient to cause the reasonably induced "heat of passion" reducing the crime to manslaughter. Defendant's own testimony was that decedent was stabbed as a result of his accidentally falling on the knife. Defendant denied the stabbing altogether. Thus, on either theory, the submission of a "heat of passion" instruction was not appropriate.

A careful consideration of the evidence clearly gives rise to the inference that the trial court did not believe the evidence justified submission of the crime of first-degree manslaughter. However, even if the evidence had suggested submission of "heat of passion" manslaughter, defendant would have impliedly and expressly waived his right to the submission of that charge by the failure to request such an instruction and by counsel's request for a "self-defense" instruction. State v. Jordan, *supra;* State v. Keenan, 289 Minn. 313, 184 N. W. (2d) 410.

■ Defendant herein has urged several instances of inadequate representation by his counsel. However, the record is clear that defendant was afforded adequate aid and representation by his privately retained counsel, and we find his claims to the contrary without merit.

■ The obligation of this court in reviewing a verdict of guilty arrived at by the jury after trial is well settled:

"In passing upon the weight and sufficiency of the evidence we can only repeat that the scope of our review is limited to ascertaining whether under the evidence contained in the record the jury could reasonably find the accused guilty of the offense charged. If the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that defendant was proven guilty of the offense charged, a reviewing court will not disturb its verdict." State v. Norgaard, 272 Minn. 48, 52, 136 N. W. (2d) 628, 631.

See, also, State v. Markuson, 261 Minn. 515, 113 N. W. (2d) 346.

In State v. Thompson, 273 Minn. 1, 36, 139 N. W. (2d) 490, 515, this court said:

"We are also governed by the rule that on appeal this court must take the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved anything which contradicted their testimony. State v. Homme, 226 Minn. 83, 32 N. W. (2d) 151; State v. Schabert, 222 Minn. 261, 24 N. W. (2d) 846, 31 Minn. L. Rev. 375. The credibility of the witnesses was clearly for the jury. While the character of the state's witnesses leaves much to be desired, if the jury believed them, as we must assume it did, their testimony, coupled with the circumstantial evidence corroborating it, is sufficient to sustain the verdict."

The record reveals that the following evidence was considered by the jury in arriving at the verdict in the instant case:

Patricia Rust testified that she arrived at the second-floor desk of the Glendale Apartment Hotel shortly after 1 a. m. February 4, 1969; that she then saw defendant on top of and straddling the decedent; that defendant had a knife in his hand and stabbed the decedent in the chest; and that defendant "stood over the victim" briefly and then left with another person who

took the knife from him. Her testimony was partially corroborated by that of one John Carroll. Carroll testified that he heard a fight, went out of his apartment, and saw decedent on the floor with defendant, a knife in his hand, on top of the decedent; that defendant threatened to "cut" decedent's head off and "to kill this honkey"; and that Carroll tried to pull defendant off decedent. Carroll saw blood on the decedent when they had become separated and, although he did not see the stabbing, he positively identified the knife in evidence at the one defendant had in his hand.

Robert Charles Anderson testified that he followed Miss Rust up the stairs to the second floor and saw defendant on top of the decedent; and, while only 10 or 15 feet away, he heard defendant say to the decedent, "If you made another move I would cut you wide open." Anderson stated that while he did not see an actual stabbing, defendant held a knife in his hand, with a blade similar to the blade of the knife introduced into evidence, which he handed to a woman before leaving the scene.

Phyllis Joanne Fox, who was with Miss Rust and Mr. Anderson, testified that on arrival on the second floor she saw a man lying on the floor and another man getting up and standing over him.

Paul W. Books, the night clerk at the Glendale, testified that he saw defendant with a knife in his hand as defendant and decedent came up the stair to the second floor; that that knife was similar to the one in evidence; that he saw defendant on top of the decedent on the floor; that while he was aware of an argument between the two men, he did not see the decedent swing or start a fight; and that defendant got up and the decedent walked to the desk, where he "dropped."

Raymond Blumhoefer, a resident of the hotel, testified that he heard the decedent call defendant a "black son-of-a-bitch" and saw him slap defendant a couple of times; that they went down to the floor; that defendant had a knife in his hand when they went down and straddled the decedent; and that the knife this

witness saw in defendant's hand was similar to the one introduced into evidence.

The record further reveals that none of the witnesses saw any weapon at the scene other than the knife held by defendant.

Harold Alfultis, criminologist in charge of the St. Paul Police Department Crime Laboratory, testified that blood tests were performed on the knife; defendant's coat; and a shirt the deceased was wearing. The tests showed that blood on these articles was of the same blood group as that of the decedent.

Defendant testified that the decedent had made numerous attacks on him with the knife which, according to defendant, the decedent picked up after it fell from defendant's pocket. Defendant further testified that he believed the fatal wound was inflicted as a result of the decedent's accidental fall on the knife.

While Miss Rust was the only witness to actually see the stabbing, the testimony of the other eyewitnesses is fully corroborative with respect to lack of, or minimal, provocation by the decedent, verbal threats of defendant, and defendant's position on top of decedent with a knife in his hand. When compared with the inherent unlikelihood of defendant's story that decedent had a knife and must have stabbed himself in falling, coupled with defendant's conduct before and after the event, it is not surprising that the jury chose to believe the state's witnesses and to disbelieve defendant's story. The evidence not only supports, but very nearly compels, the finding that defendant was guilty of intentional but unpremeditated murder.

We are bound to conclude, based upon the record and the various authorities cited, that none of the claims of error has merit. The verdict of the jury is amply supported by the evidence and the judgment of conviction entered in pursuance thereof is affirmed.

Affirmed.

PETERSON, JUSTICE (concurring specially).

The evidence undoubtedly supports a verdict that defendant, without premeditation, intentionally caused decedent's death

(murder in the second degree, Minn. St. 609.19). Had the issue been submitted, however, the jury might have found that defendant's act was "in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances" (manslaughter in the first degree, Minn. St. 609.20[1]). There was testimony that the decedent struck defendant and variously called him "a black bastard" and a "black son of a bitch." It is cavalier to dismiss this evidence of provocation as "minimal" and insufficient "as a matter of law." Cf. State v. Boyce, 284 Minn. 242, 254, 170 N. W. (2d) 104, 112.

It is nevertheless clear, both from the thrust of defendant's evidence and his counsel's colloquy with the court concerning submission of instructions, that defendant, as a matter of strategy, elected to go to the jury on an "all-or-nothing" verdict, waiving specific instructions as to causing death in the heat of passion. State v. Keenan, 289 Minn. 313, 184 N. W. (2d) 410. This, like other trial tactics of defendant's retained counsel, may, with benefit of hindsight, have been mistaken, but I agree that it does not constitute reversible error. I accordingly concur in the result.

OTIS, JUSTICE (concurring specially).
I join in the concurring opinion of Mr. Justice Peterson.