In the Matter of the WELFARE
OF J.W.L., Child.

No. A06–863.

Court of Appeals of Minnesota.

June 5, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Sarah A. McGee, Mark N. Lystig, Assistant County Attorneys, St. Paul, MN, for respondent State of Minnesota.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy Public De-

fender, Gregory Scanlon, Certified Student Attorney, Minneapolis, MN, for appellant J.W.L.

Considered and decided by LANSING, Presiding Judge; PETERSON, Judge; and CRIPPEN, Judge.*

## OPINION

PETERSON, Judge.

This appeal is from a denial of a motion to suppress photographs of graffiti taken by a police officer who discovered the graffiti while searching a home during an emergency. Appellant argues that taking the photographs constituted a seizure and, therefore, because (1) the officer could not remain in the home to take the photographs after finding no emergency in the home and (2) the officer did not have probable cause to believe that a crime had been committed, taking the photographs violated appellant's right to be secure against unreasonable searches and seizures. Because the state has not identified an exception to the warrant requirement that permitted the officer to take the photographs, the district court erred in not suppressing the photographs, and we reverse.

## FACTS

On July 17, 2005, someone made a 911 call from a residence in St. Paul and hung up. The dispatcher made a routine callback, and there was no answer. As part of the standard protocol for responding to a hang-up call, two St. Paul police officers were dispatched to the residence. The officers knocked on the front door of the residence, and no one answered. The officers walked to the back of the house and

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

found a door open. The officers called out to announce their presence and that they were going to enter the house. Nobody answered, and the officers entered the house and checked all of the rooms that they could in order to make sure that everybody was safe and secure. While searching the house, one of the officers found a bedroom in which the ceiling, walls, door frame, closet, and furniture were covered with graffiti. The officer went to his squad car to retrieve a camera and then returned to the bedroom and took seven photographs of the graffiti. The officer who took the photographs acknowledged that when he took them, no crime had been committed, and he testified that "the pictures weren't taken for evidentiary purposes of a crime being committed, they were for information only." The officer wrote an informational report and turned the photographs over to a graffiti investigator in the St. Paul Police Department.

About two weeks later, the graffiti investigator received a report about graffiti incidents that occurred at multiple businesses in the vicinity of Snelling Avenue and Minnehaha Avenue around July 29 and July 30, 2005. The investigator later received a report about a graffiti incident that occurred in the St. Anthony Park neighborhood around August 11 and August 12, 2005. The graffiti in both incidents included a distinctive design, or "tag," that was also included in the graffiti in the photographs taken during the search of the residence on July 17. Using the photographs, the graffiti investigator was able to connect appellant J.W.L. to the two graffiti incidents.

After further investigation, J.W.L. was charged by delinquency petition with criminal damage to property in violation of Minn.Stat. § 609.595, subd. 1(3) (2004), for each of the two incidents. Appellant moved to suppress the photographs that the police had taken during the July 17 search. The motion was denied, and the case was presented to the juvenile court on stipulated facts pursuant to *State v. Lothenbach*, 296 N.W.2d 854, 857–58 (Minn. 1980), thereby reserving J.W.L.'s right to challenge the denial of his motion to suppress the photographs. The juvenile court determined that J.W.L. was guilty, stayed adjudication, and ordered J.W.L. to pay restitution. This appeal challenging the denial of the suppression motion and the determination of J.W.L.'s guilt followed.

## ISSUE

Are photographs of graffiti discovered in plain view inside a home when a police officer entered and searched the home to make sure that everybody in the home was safe and secure admissible as evidence in a prosecution for offenses that occurred after the officer took the photographs?

## ANALYSIS

■ "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999).

■ The Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution guarantee individuals the right to be secure against unreasonable searches and seizures. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). But the warrant requirement is subject to certain limited exceptions, and law-enforcement officers, in pursuing a community-caretak-

ing function, "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart,* — U.S. —, —, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006); *see State v. Lemieux,* 726 N.W.2d 783, 787–90 (Minn.2007) (addressing community-caretaking function and emergency-aid search).

J.W.L. does not dispute that the officers' initial entry into the home and their search of the home to make sure that everybody was safe and secure were justified under the emergency-aid exception to the warrant requirement. J.W.L. argues, however, that after verifying that no emergency existed, the officers no longer had a legitimate basis for remaining in the home, and the officer violated J.W.L.'s Fourth Amendment rights by taking photographs of the graffiti.

■ The state contends that the argument that the police were not properly in the home when the photographs were taken was waived in the district court when, in response to a question from the court, J.W.L.'s counsel stated, "[M]y argument has never been whether [the officer] had a right to be there. My question is whether he had a right to seize it, a seizure of goods or evidence from a place that he had a right to be in but where no crime had been committed."

We do not agree that this statement establishes waiver of the argument that the police were not properly in the house when the photographs were taken. In the district court, J.W.L.'s counsel acknowledged that the police had the right to enter the house and search it to check on the well-being of anybody in it. Counsel then said:

> That is not the issue. The issue is once they find that no crime has taken place, that no crime—that nobody is injured in

this particular situation, that the well-being of anybody that might be in the home has been taken care of, and since there was nobody in the home it would be their obligation at that time to then leave.

This statement expresses the argument that upon learning that there was no one in the home who needed assistance, the police needed to leave. Therefore, the argument was not waived. But this argument does not address the sequence of events that actually occurred in this case. The police did not learn that there was no one in the home who needed assistance before they discovered the graffiti; they discovered the graffiti in plain view while searching the home to determine whether anybody needed assistance. Consequently, the issue that we must decide is whether J.W.L.'s right to be secure against unreasonable searches and seizures was violated when the officer photographed the graffiti discovered in plain view while the officer was in the house under the emergency-aid exception to the warrant requirement.

■ J.W.L. argued in the district court that even though the graffiti was in plain view, taking photographs of the graffiti was an impermissible seizure because the graffiti's incriminating nature was not immediately apparent. This argument is based on the plain-view exception to the warrant requirement, which makes evidence that the police seize after discovering it in plain view admissible under certain circumstances. Under this exception, evidence is admissible when it was "in plain view, there was a prior justification for an intrusion, the discovery was inadvertent, and there was probable cause to believe that the items seized were immediately apparent evidence of crime." *State*

*v. Bradford,* 618 N.W.2d 782, 795 (Minn. 2000) (quotation omitted).

The district court determined that there was not an impermissible seizure because photographing the graffiti did not constitute a seizure. The court explained:

> When the police officers arrived the graffiti was on the wall and when they left, the graffiti was still on the wall. The officers did not take the graffiti or part of the wall from JWL, and they simply recorded what they saw through the use of a Polaroid camera. There was no seizure which would trigger a Fourth Amendment warrant requirement.

The district court also cited *State v. Fulford,* 290 Minn. 236, 187 N.W.2d 270 (1971), for the principle that when police are where they have a legal right to be, they may photograph the area that is in plain view. In *Fulford,* police who were summoned to an apartment building found an injured man seated, hunched over, on the stair landing of the second floor. *Id.* at 237, 187 N.W.2d at 272. The officers went to the defendant's room on the third floor, asked to be let in, and after being told to get a passkey, kicked in the door and entered the room. *Id.* The defendant was searched and arrested, and an 8–inch knife was found during the search of a coat that was hanging over a chair in close proximity to the defendant. *Id.* When the police arrested the defendant, they also took photographs of his room. *Id.* at 238, 187 N.W.2d at 272.

The defendant was convicted of second-degree murder. *Id.* at 237, 187 N.W.2d at 272. In an appeal from his conviction, the defendant asserted that the photographs of his room were inadmissible, and without any analysis, the supreme court concluded that

> it is apparent from the evidence that no search and seizure was involved in the

instant case. Since the police officers were validly in the room, they could properly view everything in plain sight in that room. *State v. Clifford,* 273 Minn. 249, 141 N.W.2d 124; *State v. Kotka,* 277 Minn. 331, 152 N.W.2d 445, *certiorari denied,* 389 U.S. 1056, 88 S.Ct. 806, 19 L.Ed.2d 853; *State v. Huffstutler,* 269 Minn. 153, 130 N.W.2d 347. If the officers could validly view the inside of the room at all, they could validly photograph that which was in plain sight, and the photographs were properly admitted in evidence.

*Id.* at 240, 187 N.W.2d at 273.

Like the district court, this court may not disregard a decision of the supreme court, and the supreme court decided in *Fulford* that photographing that which is in plain sight is not a seizure. But after the district court rendered its decision in this case, the supreme court released its opinion in *State v. Lemieux,* 726 N.W.2d 783, which addresses the permissible scope of a search of a residence under the emergency-aid exception to the warrant requirement and leads us to conclude that even if no seizure occurred when the officer photographed the graffiti, the photographs of the graffiti are not admissible under the emergency-aid exception to the warrant requirement.

In *Lemieux,* police officers who went to a home during the course of a murder investigation saw as they approached the front of the home that the screen on the window to the right side of the door had been torn loose, the window had been pushed up, and the door was slightly open. 726 N.W.2d at 785. The officers also heard music playing inside, and a CD sounded like it was skipping. *Id.* One of the officers pounded on the door loudly enough to be heard over the music, and another officer shouted the name of the woman who lived in the home and called

for her to open the door. *Id.* Meanwhile, a neighbor stepped out and told an officer that he had heard someone singing inside the home that night. *Id.* The officers became concerned that a burglary had occurred, and after calling the officer in charge of the murder investigation to report what they had observed, the officers were told to do a "health and welfare" check for possible injured occupants. *Id.*

Officers entered the home, and while conducting a sweep search, an officer saw the murder victim's electronic-benefit-transfer card in plain view. *Id.* at 785–86. After the sweep search, the home was secured, and a search warrant was obtained. *Id.* at 786. During the execution of the search warrant, police found blood smears that matched the murder victim's DNA profile, miscellaneous items that belonged to the victim, and an envelope with the victim's fingerprint. *Id.*

Lemieux was indicted for murder, and before trial, he moved to suppress the evidence discovered during the warrantless sweep search and all evidence derived from that search. *Id.* at 786–87. The district court concluded that the warrantless entry was justified under the emergency-aid exception to the warrant requirement and denied the motion. *Id.* at 787. On appeal from the judgment of conviction, Lemieux challenged the admission of the evidence derived from the warrantless sweep search. *Id.*

In addressing this challenge, the supreme court explained the test for determining whether an emergency justified a warrantless entry and then stated:

> "But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation'...." *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Any

> search of a residence following a warrantless entry must be "limited by the type of emergency involved. It cannot be used as the occasion for a general voyage of discovery unrelated to the purpose of the entry." *United States v. Moss,* 963 F.2d 673, 678 (4th Cir.1992) (holding that even if original entry of cabin had been justified under the emergency-aid exception, search of defendant's backpack for identification was unreasonable).

*Id.* at 788 (omission in original).

The supreme court determined that the search was "limited to the scope of the emergency, sweep-searching the floors for the presence of intruders or injured occupants and departing immediately upon finding the residence unoccupied," and held that the police entry of the home "was justified under the emergency-aid exception to the warrant requirement because the officers had reasonable grounds to believe that a burglary was in progress or had recently occurred, the entry was motivated primarily to look for possible victims, and *the scope of the search was limited to the emergency.*" *Id.* at 790 (emphasis added).

Because the scope of an emergency-aid search must be limited to the scope of the emergency, the district court's determination that "[t]here was no seizure which would trigger a Fourth Amendment warrant requirement" did not fully address the limitations on the officer's authority to photograph the graffiti during the search. Even if there was no seizure, the photographs were taken while the officers were in the house without a warrant, and they were later used as evidence against J.W.L. Photographing the graffiti was police conduct during an emergency-aid search of a home, and as the supreme court explained in *Lemieux,* an emergency-aid search of a home following a warrantless entry must

be limited by the type of emergency involved. Therefore, the Fourth Amendment warrant requirement would be triggered if taking the photographs during the emergency-aid search exceeded the scope of the emergency.

The emergency involved in the officers' warrantless entry into the home where the graffiti was found was a 911 hang-up call that raised concerns that somebody in the home might need assistance, and the officers entered the home in order to make sure that everybody was safe and secure. Taking photographs of the graffiti was not related to this emergency in any way and, therefore, exceeded the scope of the permissible emergency-aid search and was not permitted under the emergency-aid exception to the warrant requirement.

■ After determining that photographing the graffiti was not a seizure that would trigger a warrant requirement, the district court also considered whether taking the photographs was permissible even if it were a seizure. The district court concluded that because the graffiti was in plain view and it was reasonable for the officer to believe that the graffiti was the cause of the 911 call, there was probable cause to believe that the graffiti was useful as evidence of a crime, which permitted the officer to photograph the graffiti.

> Under the "plain view" exception to the warrant requirement, the police may, without a warrant, seize an object they believe to be the fruit or instrumentality of a crime, provided: (1) the police are legitimately in the position from which they view the object; (2) they have a lawful right of access to the object; and (3) the object's incriminating nature is immediately apparent.

*State v. Zanter*, 535 N.W.2d 624, 631 (Minn.1995) (quotation omitted).

■ When an object revealed in plain view gives probable cause to believe that a crime has been committed, the object's incriminating character is immediately apparent and a warrantless seizure is justified. *In re Welfare of G.M.*, 560 N.W.2d 687, 693 (Minn.1997); *see also Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987) (probable cause required in order to invoke plain-view doctrine; reasonable suspicion is insufficient). "Probable cause exists where 'the facts available to the officer would warrant a [person] of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of crime.'" *State v. DeWald*, 463 N.W.2d 741, 747 (Minn.1990) (alteration in original) (quoting *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983)).

The facts available to the officer when he photographed the graffiti were that in a home where a 911 hang-up call was made, there was a bedroom with the ceiling, walls, door frame, closet, and furniture covered with graffiti. While these facts were unusual, we disagree with the district court that they were sufficient to establish probable cause. Unlike *Fulford*, the photographs were not taken at the scene of an arrest. Without any evidence that the graffiti was not authorized by an occupant of the home, a person of reasonable caution would not be warranted in believing that the graffiti was evidence of a crime. In fact, the officer who took the pictures testified that when he took them, no crime had been committed, the graffiti was of interest to him because it told him that somebody was practicing to write someplace else, and he took the pictures for information only, not for evidentiary purposes. Therefore, because there was not probable cause to believe that a crime had been committed at the time the photo-

graphs were taken,[1] a warrantless seizure was not justified under the plain-view exception to the warrant requirement.

 "It is established that evidence discovered by exploiting previous illegal conduct is inadmissible." *State v. Olson,* 634 N.W.2d 224, 229 (Minn.App.2001) (citing *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)), *review denied* (Minn. Dec. 11, 2001). Evidence that is obtained by the exploitation of illegal actions by law enforcement must be suppressed. *Wong Sun, 83 S.Ct. 407,* 371 U.S. at 487–88, 83 S.Ct. at 417. Thus, the evidence obtained by using the photographs of the graffiti to link J.W.L. to the later graffiti incidents is inadmissible, and there is insufficient evidence to support the determination of J.W.L.'s guilt.

## DECISION

Because photographing the graffiti was not related to the emergency that permitted the officers to enter the home without a warrant, photographing the graffiti was not permitted under the emergency-aid exception to the warrant requirement. Because the facts available to the officer when he photographed the graffiti did not establish probable cause to believe that a crime had been committed, photographing the graffiti was not permitted under the plain-view exception to the warrant requirement. Because the officer photographed the graffiti after entering the home without a warrant and the state has not identified an exception to the warrant requirement that permitted the officer to take the photographs, the district court erred in not suppressing the photographs, and we reverse the denial of J.W.L.'s motion to suppress the photographs and the determination of J.W.L.'s guilt.

**Reversed.**

1. The state argues that it does not matter that J.W.L.'s crimes did not occur until weeks after the photographs were taken, so long as the officer thought that he was seizing evidence of an existing crime. But this argument ignores the requirement that facts available to the officer when the photographs were taken must establish probable cause to believe that a crime has been committed. Time has shown that the officer's suspicion that somebody was practicing to write someplace else was warranted. However, the officer's suspicion is insufficient to permit the officer to seize evidence in plain view in anticipation of a crime.