*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1245**

State of Minnesota,
Appellant,

vs.

Aaron Benjamin Jacobs,
Respondent.

**Filed March 9, 2015
Reversed and remanded
Kirk, Judge**

Ramsey County District Court
File No. 62-CR-14-1382

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for appellant)

Erik L. Newmark, Jill A. Brisbois, Newmark Law Office, LLC, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**KIRK**, Judge

In this pretrial prosecution appeal, appellant State of Minnesota argues that the district court erred by granting respondent Aaron Benjamin Jacobs's motion to suppress

evidence obtained as a result of the search of his house. We reverse and remand to the district court for further proceedings.

## FACTS

On February 27, 2014, the state charged Jacobs with two counts of fifth-degree controlled substance crime. The complaint alleged that police officers who were investigating a traffic accident observed drug paraphernalia and smelled unburned marijuana inside Jacobs's house. The complaint further alleged that officers searched Jacobs's house after obtaining a search warrant and located approximately 3.25 pounds of marijuana, several forms of identification in Jacobs's name, over $14,000 in cash, and various drug paraphernalia.

Jacobs moved to suppress the evidence obtained as a result of the entry into his house and the subsequent search pursuant to a warrant and for dismissal of both counts of the complaint. Jacobs claimed that the police entered his house without a warrant and that no exception to the warrant requirement applied. The district court held a contested omnibus hearing to address the motion.

St. Paul Police Officer Jamie Lalim testified that on February 25, 2014, he responded to a call for assistance from Officer Matt Jones, whose squad car was involved in a collision with another car. When Officer Lalim arrived at the scene of the collision, another officer was already there talking to Officer Jones, who was stuck inside his squad car. Officer Lalim testified that the collision "was bad" and Officer Jones's squad car appeared to be totaled. Officer Jones appeared confused, but he was able to tell the officers that a white male had fled the scene.

2

Officer Lalim checked the other car that was involved in the collision, but there was no one inside. He called for backup and ran the car's license plate. Dispatch informed Officer Lalim that the car was registered to Jacobs, who lived three-and-a-half blocks from the location of the collision. Officer Lalim went to Jacobs's address, which is a single-family home. He first went to the front door of the house, but he concluded that no one had used that door recently because snow was covering the sidewalk leading to the front door. Officer Lalim then went to the house's south door, which was accessible from the driveway. Officer Lalim observed what appeared to be fresh blood on the handle of the door and called for backup officers.

After the additional officers arrived, they knocked on the door multiple times, but nobody answered the door. Officer Lalim could see through the kitchen window from his position at the door and he observed a white male, who was later identified as Jacobs, walk into the kitchen. Jacobs was naked, swaying back and forth, and appeared to be confused. One of the officers called their sergeant and asked if they could enter the house to conduct a welfare check because he believed the person inside the house was involved in a serious accident and possibly had internal injuries. The sergeant gave the officers permission to enter.

One of the officers kicked in the door, overcoming an initial attempt by Jacobs to hold the door closed. When the officers entered the house, they found themselves standing in a small hallway. Jacobs struggled with the officers before an officer was able to place him in handcuffs. Because the hallway was too small to accommodate Jacobs and the officers, they entered the kitchen during the struggle. Officer Lalim observed

3

injuries on Jacobs's hand and the left side of his head. The officers asked Jacobs if he had been involved in an accident, and he denied that he had. The officers then called for medics to further assess Jacobs's medical condition.

Officer Lalim testified that he smelled a strong odor of marijuana as soon as he entered the house. When he was in the kitchen after placing Jacobs in handcuffs, Officer Lalim observed two large baggies in Jacobs's oven through the oven window. He shined his flashlight through the oven window to further examine the contents. Officer Lalim testified that the officers discovered wet jeans, shoes, and a shirt or sweatshirt in the hallway and they found keys that they believed belonged to the car that was involved in the collision. Officer Lalim notified the narcotics unit that he thought there was marijuana in the oven and the officers obtained a search warrant for Jacobs's house later that day.

The district court granted Jacobs's motion to suppress. The district court concluded that the state met its burden of showing that the police officers' warrantless entry into Jacobs's house was justified by the emergency-aid exception to the warrant requirement because they "had both objectively and subjectively reasonable grounds to believe that there was an emergency at hand and an immediate need for the protection of life or property." But the district court sua sponte concluded that the search of Jacobs's oven was outside the scope of the emergency-aid exception because Officer Lalim shined his flashlight into the oven to see the marijuana inside the oven. This pretrial appeal by the state follows.

4

The state may appeal pretrial orders in felony cases under Minn. R. Crim. P. 28.04, subd. 1. "To prevail, the state must 'clearly and unequivocally' show both that the trial court's order will have a 'critical impact' on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Zanter*, 535 N.W.2d 624, 630 (Minn. 1995). Critical impact is shown when "the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *State v. Kim*, 398 N.W.2d 544, 551 (Minn. 1987). The state need not "show that conviction is impossible after the pretrial order—only that the prosecution's likelihood of success is seriously jeopardized." *State v. Underdahl*, 767 N.W.2d 677, 683 (Minn. 2009).

Here, the charges against Jacobs are based solely on the marijuana and drug paraphernalia that the police discovered in Jacobs's house. The suppression of that evidence results in the dismissal of the charges against Jacobs. Therefore, the state has demonstrated that the district court's order granting Jacobs's motion to suppress evidence has a critical impact on its ability to prosecute Jacobs successfully. *See State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005) ("Because no other evidentiary basis for the charges in the complaints exists, we conclude that suppression of the evidence seized from the . . . residence has a critical impact on the state's ability to prosecute these cases."), *review denied* (Minn. Feb. 22, 2006).

The state next must prove that the district court's pretrial order was error. *State v. Baxter*, 686 N.W.2d 846, 851 (Minn. App. 2004). "When reviewing pretrial orders, this

court may independently review the facts and determine, as a matter of law, whether the district court erred." *Id.*

The state argues that the district court erred by concluding that the officer's use of a flashlight to look into the oven "transformed[ed] a plain-view situation into a search that requires a warrant or some exception to the warrant requirement." In response, Jacobs argues that this court should affirm the district court's order suppressing the evidence obtained during the search of his house. Jacobs does not specifically respond to the state's argument about the use of the flashlight during the search, other than to argue that Officer Lalim's search of the oven exceeded the scope of the officers' entry into his house under the emergency-aid exception to the warrant requirement. Instead, Jacobs argues that the officers' initial entry into his house was illegal. We first address Jacobs's argument because the determination of whether the officers' warrantless entry into the house was reasonable affects the reasonableness of the search of the oven.

Both the United States and Minnesota Constitutions guarantee an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "[W]arrantless searches and seizures are *per se* unreasonable unless they fall under an established exception." *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992). If a warrantless search does not fall within an exception, the fruits of the search must be suppressed. *Id.*

Under the emergency-aid exception to the warrant requirement, police officers, "in pursuing a community-caretaking function, may enter a house without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent

6

injury." *State v. Lemieux*, 726 N.W.2d 783, 787-88 (Minn. 2007) (quotation omitted). It is the state's burden to demonstrate that the police officers' conduct was justified under the exception. *Id.* at 788. Courts apply an objective standard "to determine the reasonableness of the officer's belief that there was an emergency." *Id.* The supreme court noted in *Lemieux* that many courts apply the following three-prong test: (1) the police officers "must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property"; (2) the officers' primary motivation in conducting the search must not be the intent to arrest and seize evidence; and (3) the officers must have "some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *Id.* The supreme court further noted that "assuming that the officers' subjective motivations are a relevant state-law consideration, a warrantless search conducted during a criminal investigation does not necessarily preclude application of the emergency-aid exception so long as one of the motives for the warrantless search corresponds to an objectively reasonable emergency." *Id.* at 790.

Here, the record establishes that one of the officers' motives for the warrantless search corresponded to an objectively reasonable emergency. Officer Lalim went to Jacobs's house directly from the scene of what he described as a "bad" two-car collision that totaled at least one of the cars involved. Officer Lalim had observed that the officer who was involved in that collision was confused and possibly hurt. When Officer Lalim arrived at the address of Jacobs, the registered owner of the second car involved in the collision, he observed blood on the house's door handle. No one responded to the

7

officers' multiple knocks at the door and Officer Lalim observed a man through a window who was naked, swaying back and forth, and appeared to be confused. Under these circumstances, it was reasonable for the officers to believe that Jacobs had been involved in the collision, was injured, and needed emergency assistance.

Jacobs argues that the officers' entry into the house was "primarily motivated by intent to arrest and seize evidence," not to check on his welfare. He contends that this motivation is demonstrated by the officers' failure to ask him if he needed assistance or to call for medical assistance while they were outside the house or to check his medical condition once they were inside the house.

But *Lemieux* does not require a determination of the officers' primary motivation. Instead, the *Lemieux* court noted that *one* of the motives for the entry must correspond to an objectively reasonable emergency. 726 N.W.2d at 790. Here, the record establishes that the officers entered the house to check on Jacobs's welfare after he failed to answer their knocks on the door and they observed behavior from him through the window indicating that he was possibly hurt. The officers did not necessarily need to request medical assistance for Jacobs until they were able to assess his medical condition in person. The fact that Officer Lalim saw Jacobs walking around inside the house indicates that although his medical condition was possibly serious, he was at least mobile. The reason that the officers placed Jacobs in handcuffs upon entering the house was because he tried to prevent them from entering and then further struggled with them when they attempted to place him in handcuffs. Once the officers subdued Jacobs, they assessed his medical condition and called for an ambulance. Therefore, we conclude that the district

8

court did not err by determining that the officers were justified in entering the house under the emergency-aid exception to the warrant requirement.

Finally, we do not consider whether the district court erred by determining that the officers' search of Jacobs's oven exceeded the scope of the officers' warrantless entry into the house under the emergency-aid exception because we conclude that the district court erred by sua sponte considering that issue. The only issue that Jacobs raised in his motion to suppress was whether the police officers' entry into his house was illegal.[1] The state therefore did not have notice that the district court would sua sponte consider whether the police exceeded the scope of the entry under the emergency-aid exception by using a flashlight to look inside Jacobs's oven. Because the state did not have notice, it did not have the opportunity at the suppression hearing to develop the record regarding the police officers' actions inside Jacobs's house or to present oral or written arguments on the issue. We therefore reverse the district court's pretrial order granting appellant's motion to suppress and remand for further proceedings consistent with this opinion.[2]

**Reversed and remanded.**

---

[1] The record does not reflect the state's understanding that Jacobs was also arguing that the search exceeded the scope of the officers' entry under the emergency-aid exception to the warrant requirement. However, if a discussion occurred off the record, the district court would only need to make an appropriate record on remand that there was such an understanding.

[2] We do not prejudge what the district court will find on remand after a more thorough contested omnibus hearing. In fact, the district court may still reach the conclusion that Officer Lalim's search of the oven exceeded the scope of the emergency entry into the house, taking into consideration this court's opinion in *In re Welfare of J.W.L.*, 732 N.W.2d 332 (Minn. App. 2007).